UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                  :

EMUNA KORENBILT, *et al.*,             :

                          :

              Plaintiffs,     :

                          :

       -v-             :          25 Civ. 4288 (JPC)

                          :

UNITED AIRLINES, INC. and JOHN DOE,   :     OPINION AND ORDER

                          :

             Defendants.    :

                          :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

In this action, a group of passengers who had an allegedly unpleasant flight experience sue United Airlines and the flight's pilot.  But any claims arising from the flight must be brought under the international treaty governing international air travel, and Plaintiffs have failed to state any claims recognized by that treaty.  So the Court grants Defendants' motion to dismiss with prejudice and without leave to amend.

## I.  Background

### A.  Facts[1]

Plaintiffs, sixty-five individuals hailing from several states plus the country of Israel, boarded a flight operated by Defendant United Airlines and piloted by Defendant John Doe on

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from Plaintiffs' operative Amended Complaint, the ninth Complaint filed on the docket, Dkt. 24 ("Am. Compl.").  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").  Because of technical filing deficiencies, there is some confusion as to whether this is Plaintiffs' third or fourth Amended Complaint and as to which docket entry houses the operative Amended Complaint.  *See* Dkt. 28 ("Motion") at 2 n.1 (treating

April 22, 2023. Am. Compl. ¶¶ 5-74. The flight, UA 90, was to depart from Newark Liberty International Airport in Newark, New Jersey and arrive at Ben Gurion Airport in Tel Aviv, Israel, in time to observe Israel's Memorial Day and Independence Day. *Id.* ¶¶ 1, 74. But about three hours into the flight, passengers observed an elderly male passenger briefly sit in a steward's jump seat, an incident which caused the plane to turn around and return to Newark, where the man was escorted off the aircraft. *Id.* ¶¶ 77-78. When the other passengers complained about the diversion, a steward allegedly responded that they should "blame" the removed passenger, who was "one of [them]," a response that Plaintiffs interpret as suggesting an association between the man and the other Jewish individuals on the flight. *Id.* ¶ 77.

Once back at Newark Airport, Plaintiffs were held on the plane for about three more hours. *Id.* ¶ 80. During this time, Plaintiffs were not offered food or water, and their requests for water were refused because supplies were "running low." *Id.* The lack of food and water was compounded by United's failure to provide as many kosher meals as were requested before the flight. *Id.* ¶¶ 75-76. Plaintiffs allege that they were "collectively punished and publicly humiliated for engaging in protected cultural and religious expression, including requesting kosher meals" and "stating their desire to go to Israel on time for the Memorial Day and Independence Day services." *Id.* ¶ 81.

After finally exiting the plane, Plaintiffs allege that they were required to wait in line for another three hours to obtain hotel and meal vouchers. *Id.* ¶ 86. Several unidentified Plaintiffs reported experiencing dehydration from being held on the plane without water, and at least one of

Docket Number 20 "as the operative complaint" but acknowledging that that entry is "virtually identical" to Docket Number 24, which is the entry that the Clerk's Office accepted). While this confusion does not affect the resolution of the instant motion to dismiss, the Court clarifies that it is addressing the Amended Complaint filed on August 18, 2025 at Docket Number 24.

them had to leave the airport to seek medical attention for dehydration.  *Id.* ¶¶ 82, 85.  As alleged, United failed to provide "guidance or support" to these Plaintiffs, *id.* ¶ 85, and indeed its representatives responded to some of Plaintiffs' concerns by asking "Do you think if you cry it will help?" and stating that "It is one of your own who spoke badly, and because of him the flight was returned," *id.* ¶ 86.  Plaintiffs interpret these comments as being about their Jewish or Israeli identity.  *Id.*  And when some Plaintiffs eventually received hotel accommodations, those rooms were in substandard condition, with no better lodging options available.  *Id.* ¶ 85.

About eighteen hours after they initially departed Newark, some Plaintiffs were rebooked on a different flight, UA 3040.  *Id.* ¶ 82.  But there was a similar shortfall of kosher meals on the rebooked flight, and some Plaintiffs on that flight were required to surrender religious items that they previously had been allowed to carry on board.  *Id.* ¶¶ 82, 87.

In all, Plaintiffs allege that they "suffered substantial delays as well as economic and non-economic harm, including forfeiture of non-refundable accommodations, inability to observe Israeli Memorial Day and Independence Day with family, missed religious events, and emotional distress."  *Id.* ¶ 88; *see also id.* ¶ 82 ("Additional instances of personal property loss and damage were also reported during this leg of travel.").  Plaintiffs describe their experience "as degrading, exhausting, and emotionally traumatic as they missed planned events in Israel."  *Id.* ¶ 86.

**B.      Procedural History**

A group of fifty-seven Plaintiffs originally brought this action in the New York State Supreme Court, County of New York, on April 23, 2025, claiming (1) a violation of the New York State Human Rights Law, N.Y. Exec. L. § 296; (2) intentional infliction of emotional distress; (3) negligent hiring, retention, and supervision; and (4) punitive damages for willful misconduct.  Dkt. 1, Exh. A ¶¶ 18-30.  Defendants removed the case to this District on May 21, 2025.  Dkt. 1.  After

Defendants sought leave to file a motion to dismiss the original Complaint, Dkt. 4, and the initial group of Plaintiffs indicated an intent to amend the Complaint, Dkt. 8, this Court granted leave to file an amended Complaint, Dkt. 9.

On June 30, 2025, a revised group of Plaintiffs filed the first amended Complaint, now claiming (1) a violation of 42 U.S.C. § 1981; (2) breach of contract; (3) false imprisonment; and (4) breach of the common carrier duty. Dkt. 12 ¶¶ 85-99. A few days later, on July 3, 2025, those Plaintiffs filed yet another amended Complaint without leave of Court, raising the same claims. Dkt. 13 ¶¶ 85-100. Defendants once again sought leave to move to dismiss these amended Complaints, Dkt. 14, while Plaintiffs responded by seeking to "amend the caption to add, remove, and correct the names of the plaintiffs to reflect the current and proper parties," Dkt. 15 at 1 (seeking to "remove[] from the caption as named plaintiffs" sixteen individuals, "as they are no longer parties to the action"). Plaintiffs filed still another amended Complaint and again without this Court's leave on July 16, 2025; this amended Complaint had an updated caption but otherwise raised the same claims as the prior amended Complaints. Dkt. 16. Defendants pointed out that Plaintiffs were "making a mess out of this Court's docket," as their various submissions were "unclear" as to whether they were "attempting to (1) add parties, (2) remove parties, or (3) correct the names of parties to this case." Dkt. 17 at 1.

To address the confusion, this Court held a conference on July 28, 2025. Dkt. 18; July 30, 2025 Minute Entry. The Court agreed with Defendants that the various Complaints filed rendered the docket "a complete mess." Dkt. 29 ("Beiersdorf Decl."), Exh. 3 ("Conference Tr.") at 5:1-5. And the Court observed that there remained a mismatch between the caption of the amended Complaint filed on July 16, 2025 and the group of Plaintiffs included in the body of that Complaint. *Id.* at 7:5-8:13. In order to ensure that the operative Complaint "lists the correct parties in the

caption, as well as in the actual allegations made in the complaint," the Court allowed Plaintiffs "to file a new amended complaint on the docket" by August 7, 2025, although the Court made clear that Plaintiffs "may not bring new causes of action or new allegations from [the] most recent complaint that [was] filed . . . on [July] 16th." *Id.* at 8:10-9:25.  And because there would "be no changes to the causes of action or the allegations in the complaint," the Court set a briefing schedule on Defendants' motion to dismiss. *Id.* at 9:22-12:2.  The Court further expressed "trouble understanding how [Plaintiffs'] claims survive under the Montreal Convention," and sought to ensure that Plaintiffs had "a good faith basis to bring this . . . action." *Id.* at 10:15-11:21.

On August 7, 2025, Plaintiffs filed what was styled as a "Third Amended Complaint."  Dkt. 20.  That Complaint brought claims for (1) a violation of Section 1981; (2) breach of contract; (3) false imprisonment *and/or delay under the Montreal Convention*; and (4) breach of the common carrier duty.  *Id.* ¶¶ 96-109.  (In other words, the so-called Third Amended Complaint purported to bring a new claim—and new factual allegations—despite this Court's explicit instructions to the contrary.  *See* Beiersdorf Decl., Exh. 4 (redline comparison of the Complaints).)  But the Clerk's Office rejected the Complaint for filing deficiencies, as it did for three subsequent attempts made on August 12, August 13, and August 14.  *See* Dkts. 20-23.  Finally, the Clerk's Office accepted the Complaint filed on August 18, 2025, Dkt. 24, which this Court treats as the operative Amended Complaint, *see supra* n.1.  The Amended Complaint raises the same four claims as the Complaint filed on August 7, 2025, including for delay under the Montreal Convention.  Am. Compl. ¶¶ 96-109.

On August 19, 2025, Defendants requested to extend the motion-to-dismiss briefing schedule, Dkt. 25, a request which the Court granted on August 20, 2025, Dkt. 26.  Consistent with that briefing schedule, Defendants moved to dismiss the Amended Complaint on September 5,

2025. Dkts. 27-29. After the Court granted Plaintiffs' request to extend their deadline to respond, Dkts. 30-31, Plaintiffs responded on October 14, 2025, Dkt. 32 ("Opposition"). Defendants replied on October 30, 2025. Dkt. 35 ("Reply"). Plaintiffs sought leave to file a sur-reply, Dkt. 36, and the Court denied leave the next day, November 5, 2025, Dkt. 38.

## II. Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp.*, *PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III. Discussion

**A.    Plaintiffs Can Bring Claims Only Under The Montreal Convention.**

Central to this case is the Montreal Convention, signed by both the United States and Israel, *see Rosenberg v. UPS Gen. Servs. Co.*, No. 15 Civ. 6641 (VB), 2017 WL 481471, at *2 (S.D.N.Y. Feb. 6, 2017), which "applies to all international carriage of persons, baggage or cargo performed by aircraft," Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, T.I.A.S. 13038, 2242 U.N.T.S. 309, art. 1 § 1 (entered into force Nov. 4, 2003) ("Montreal Convention"). The Convention creates a "comprehensive liability regime," *Badar v.*

*Swissport USA, Inc.*, 53 F.4th 739, 743 (2d Cir. 2022), which "sets forth the types of claims that can be brought relating to international air carriage," *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 73 (2d Cir. 2023). The "self-executing Montreal Convention creates a federal cause of action for claims within its scope," but "[t]hat federal cause of action is the *exclusive* means for pursuing such claims," meaning that the Convention "preempts other civil claims within its scope." *Badar*, 53 F.4th at 743-44 (citing Montreal Convention art. 29). Indeed, the Montreal Convention preempts such claims "under local law" even when the Convention claim "does not satisfy the conditions for liability under the Convention." *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 176 (1999); *see id.* at 161 ("[R]ecovery[,] . . . if not allowed under the Convention, is not available at all."); *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 245-46 (2d Cir. 2021) (*per curiam*) (same).

The Montreal Convention has "three damage provisions," two of which—Article 17 and Article 19—are relevant here. *Badar*, 53 F.4th at 744 (internal quotation marks omitted). Under Article 17, "a 'carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the . . . injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.'" *Cohen*, 13 F.4th at 244 (quoting Montreal Convention art. 17, § 1). And Article 19 "provides that '[t]he carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.'" *Badar*, 53 F.4th at 744 (quoting Montreal Convention art. 19).

Plaintiffs concede that their "allegations—physical injuries from confinement and economic loss from delay—fall within the treaty's coverage." Opposition at 8. That concession dooms all their non-Convention claims based on those allegations—including their federal-law claim under Section 1981. "[T]he Montreal Convention preempts state *and federal* claims that fall

7

within its scope." *Badar v. Swissport USA, Inc.*, 492 F. Supp. 3d 54, 58 (E.D.N.Y. 2020) (emphasis added), *aff'd*, 53 F.4th 739.  And while Plaintiffs argue that the "Convention does not extinguish civil-rights remedies," Opposition at 11, the "Second Circuit has held that federal civil rights and discrimination claims, such as those brought under Section 1981 . . . are precluded by the Montreal Convention if they arise from acts that fall under the Montreal Convention's substantive scope," *Sanches-Naek v. TAP Portugal, Inc.*, 260 F. Supp. 3d 185, 192 (D. Conn. 2017) (citing *King v. Am. Airlines, Inc.*, 284 F.3d 352, 362 (2d Cir. 2002) (Sotomayor, J.)); *see King*, 284 F.3d at 355-62 (holding that a Section 1981 claim was barred by the Warsaw Convention, the Montreal Convention's predecessor, as "the scope of the Convention is not dependent on the legal theory pled nor on the nature of the harm suffered").  Because the alleged acts here fall within the Montreal Convention's scope, Plaintiffs can bring no claims other than those under the Convention.  The question, then, is whether Plaintiffs have stated any claims under Article 17 or Article 19.

**B.    The Amended Complaint, As Construed, Fails To State An Article 17 Claim.**

To start, the Amended Complaint does not even reference Article 17, even though a federal cause of action under Article 17 was plainly available, *see Badar*, 53 F.4th at 744, and even though the Amended Complaint (against this Court's instructions) purports to bring a claim under Article 19, *see* Am. Compl. ¶ 109.  But even setting aside "labels," as Plaintiffs urge, Opposition at 8, the Amended Complaint fails to state an Article 17 claim.  Article 17 has two "liability conditions": (1) that there was an "accident" which took place on board the aircraft or while embarking or disembarking, and (2) that the accident "result[ed] in physical injury or physical manifestation of

injury," *i.e.* a "bodily injury." *Tseng*, 525 U.S. at 160, 168.  The Court agrees with Defendants that the Amended Complaint fails to plead physical injury or physical manifestation of injury.[2]

"A physical injury is a physiological change to the body, such as 'bruises, lacerations and broken bones' which are caused by an objective, verifiable impact." *Urbach v. Deutsche Lufthansa AG*, No. 25 Civ. 2030 (BMC), 2025 WL 2959921, at *5 (E.D.N.Y. Oct. 20, 2025) (quoting *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 365 (E.D.N.Y. 2012)).  And as the Honorable Brian M. Cogan explained, "all physical bodily injuries are accompanied by a physical manifestation of that bodily injury," like a "laceration manifest[ing] in parted flesh." *Id.*  To be sure, "not all physical manifestations of bodily injuries are visible to the naked eye," and injuries like a cerebral contusion manifest themselves "in known physical *sensations*" like a "headache, dizziness, and loss of consciousness." *Id.*  "The problem," however, "is that not all invisible physical sensations are manifestations of a bodily injury." *Id.*

That is why "'[h]eadache, nausea, hunger, thirst, and discomfort' do not by themselves constitute Article 17 injuries," as they "are not 'the result of an objectively verifiable disease or impact on the body [and] they are difficult to quantify and easy to fabricate.'" *Id.* (quoting *Vumbaca*, 859 F. Supp. 2d at 372).  Here, Plaintiffs allege only "dehydration" and "physical discomfort" from there being "insufficient" food and water, Am. Compl. ¶¶ 80, 82, 85, but

---

[2] In their reply brief, Defendants make a late-breaking argument that "Plaintiffs plainly have not alleged any 'accident'" under the Montreal Convention.  Reply at 6 n.2.  But because "new arguments may not be made in a reply brief," the Court will not consider it. *Duracell U.S. Operations, Inc. v. Energizer Brands, LLC*, No. 25 Civ. 5020 (JPC), 2025 WL 2388287, at *1 (S.D.N.Y. Aug. 18, 2025) (citation omitted).  While the Court denied Plaintiffs the opportunity to file a sur-reply, that was because they "fail[ed] to identify any 'allegedly new arguments or evidence'" in the reply to which they "should be afforded an opportunity to respond," Dkt. 38 (quoting *Duracell*, 2025 WL 2388287, at *2).  Indeed, Plaintiffs' motion for leave to file a sur-reply faulted the reply brief for "*not* analyz[ing] Article 17's 'accident requirement.'"  Dkt. 36 at 2 (emphasis added).  In any event, the accident argument and the propriety of a sur-reply have no effect on the outcome of this motion to dismiss.

9

"[n]either dehydration nor food deprivation are 'bodily injuries' under the Convention," *Ojide v. Air France*, No. 17 Civ. 3224 (KBF), 2017 WL 4402569, at *2 (S.D.N.Y. Oct. 2, 2017). *Accord Vumbaca*, 859 F. Supp. 2d at 365-66 (explaining that because "[s]ymptoms experienced must be more severe than mere hunger or thirst to constitute a physical manifestation of injury," "hunger, thirst, headache, nausea, and discomfort" were "not compensable" sensations). Plaintiffs present no caselaw to the contrary,[3] so even construing the Amended Complaint as raising a claim under Article 17 of the Montreal Convention, that claim fails.

**C.  Plaintiffs Were Not Given Leave To Raise An Article 19 Claim, And Even If They Were, The Amended Complaint Fails To State An Article 19 Claim.**

As for Article 19, the Amended Complaint raised such a claim for the first time despite this Court's clear instructions that Plaintiffs "may not bring new causes of action." Conference Tr. at 8:25-9:5. "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases). Because Plaintiffs had been given "leave to amend for the limited purpose" of amending the caption and properly listing the parties in the body of the new Complaint and were "not given *carte blanche* to add new claims," the Court "could dismiss" Plaintiffs' "new" Article 19 claim "on this basis alone." *Stapleton v. Pagano*, No. 19 Civ. 952 (KMK), 2021 WL 3501163, at *4 (S.D.N.Y. Aug. 9, 2021).

---

[3] The only case Plaintiffs cite for the proposition that their alleged "physical effects" amounted to a "bodily injury" is far afield. Opposition at 9 (citing *Safa v. Deutsche Lufthansa AG*, 42 F. Supp. 3d 436, 443 (E.D.N.Y. 2014)). That case involved a heart attack—a classic bodily injury—and was decided on the ground that the plaintiff could not establish that his "injuries were the result of an 'accident' as that term is understood under the Montreal Convention." *Safa*, 42 F. Supp. 3d at 441-44.

In any event, Plaintiffs' improper Article 19 claim fails on the merits. "Courts in the Second Circuit have found that Article 19 only applies to *economic* loss occasioned by delay in transportation." *Vumbaca*, 859 F. Supp. 2d at 367 (internal quotation marks omitted). Plaintiffs' Montreal Convention cause of action asserts only "emotional distress and humiliation," Am. Compl. ¶ 107, but "[e]motional harms are not compensable under Article 19," *Vumbaca*, 859 F. Supp. 2d at 367. Elsewhere in the Amended Complaint, Plaintiffs assert "financial losses" such as "travel cancellation fees, replacement costs for damaged luggage and clothing, and out-of-pocket medical expenses," but only "for certain Plaintiffs." Am. Compl. at 15 (mislabeled paragraph number 107). Plaintiffs do not specify which of the sixty-five among them suffered these "special damages," *id.*, and "such casual, conclusory, and generalized pleading on behalf of [dozens] of persons bringing ostensibly individualized—not putative class—claims fails the most basic pleading standards of even Rule 8(a)," *Wyse v. Metro. Com. Bank*, No. 24 Civ. 9108 (PAE), 2025 WL 2208161, at *16 (S.D.N.Y. Aug. 4, 2025). *See id.* ("[C]ourts in this Circuit have consistently held that plaintiffs may not circumvent pleading standards by aggregating individualized claims and asserting them as a collective, even when the claims arise from a common course of conduct."). So even if this Court had granted Plaintiffs leave to file an Article 19 claim—which it clearly did not—the Amended Complaint falls far short of stating such a claim.

* * *

Plaintiffs protest that holding their non-Convention claims to be preempted by the Montreal Convention while also holding that they fail to state any Convention claims would leave them "without remedy." Opposition at 9-10. But that is a feature of the Montreal Convention, not a bug. *See Tseng*, 525 U.S. at 161 ("[R]ecovery[,] . . . if not allowed under the Convention, is not available at all."); *Cohen*, 13 F.4th at 246 ("[T]he Montreal Convention preempts all local claims

11

that fall within its scope, even if the claims are not cognizable under the Convention." (citation modified)).  So the Court grants Defendants' motion to dismiss the Amended Complaint.  And because Plaintiffs have already amended their Complaint multiple times and have not requested leave to further amend the Complaint, such dismissal is with prejudice and without leave to amend. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [for leave to amend] that was not made.").

## IV.  Conclusion

For the above reasons, the Court grants Defendants' motion to dismiss the Amended Complaint with prejudice.  The Clerk of Court is respectfully directed to enter judgment in Defendants' favor and to close this case.

SO ORDERED.

Dated: April 23, 2026
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

12